
George C. Aucoin
Law Offices of George C. Aucoin, APLC
2637 Florida Street, No. 25
Mandeville, LA 70448
Phone: (985) 727-2263
Fax: (985) 951-7490
e-mail: aucoingc@att.net
Attorney for Plaintiff, Robert David Townsend

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **ROBERT DAVID TOWNSEND**<br><br>**PLAINTIFF**<br><br>V.<br><br>**THE UNIVERSITY OF ALASKA** and<br>**THE UNIVERSITY OF ALASKA**<br>   **AT FAIRBANKS**<br><br>**DEFENDANTS** | **Case No.:** 3:06-CV-00171 TMB<br><br>**COMPLAINT AND DEMAND**<br>**FOR JURY TRIAL**<br><br>38 U.S.C. 4301- 4334 |

**NOW COMES,** Robert David Townsend ("Townsend"), who for his Complaint respectfully avers that:

1.

Mr. Townsend, plaintiff herein, is a person of the age of majority and domiciled within the Borough of Fairbanks, State of Alaska.

2.

Made defendants herein are **The University of Alaska**, and **The University of Alaska at Fairbanks** (collectively referred to herein as "University), business entities formed under the laws of the State of Alaska, licensed to and doing business in the State of Alaska with a principal place of business in Anchorage and Fairbanks, Alaska, respectively, and, with a registered agent in Anchorage, Alaska.

3.

This Honorable Court has jurisdiction over this matter pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA") 38 U.S.C. § 4301 et seq., specifically 38 U.S.C. § 4323(b)(3). Alternatively, this Honorable Court has jurisdiction over this claim pursuant to 28 U.S.C. §1331.

4.

Venue is proper in this Honorable Court pursuant to the provisions of USERRA, 38 U.S.C. § 4323(c)(2). Alternatively, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

5.

University first employed Townsend as a Boiler Firer Trainee on 27 July 1998.

6.

After completing a Boiler Operator's exam for a class III Boiler Operator's license, and after being offered a position and promoted to Boiler Firer on April 17, 2000 by University, Townsend's shift working hours were established as night shift hours.

7.

On or about June 3, 2001 Townsend informed his employer he was interested in joining the Alaska Air National Guard.

8.

Townsend was, within days, placed on day shift schedule hours by his employer

after informing his employer of his interest in joining the Alaska Air National Guard in the first few days of June 2001.

9.

On October 14, 2001, University inquired through an employee conflicts of interest questionnaire whether any current employees had any other employment responsibilities, in addition to employment at University, anywhere else, to include association with the Reserve or National Guard of any of the U.S. Armed Forces.

10.

Townsend truthfully replied on the form that he was a drilling reservist with the Alaska Air National Guard (hereinafter "Air Guard") and returned the completed form to his supervisors at University.

11.

In November of 2001, Townsend informed his employer through a leave request form that he was to receive Orders from the Air Guard bringing him to active duty status and requiring him to attend a period of military academic instruction in San Angelo, Texas for about six months. Townsend later provided a copy of his Air Guard duty orders to his supervisors when he received them on November 27, 2001.

12.

After receiving Orders for Air Force Intelligence School to report for academic instruction, Townsend complied with his Orders and absented himself from his place of employment from November 27, 2001 until May 19, 2002 for the express purpose of attending Air Force Intelligence School in San Angelo, Texas.

13.

Nearly six months later, Townsend informed his supervisor on 10 May 2002 that he had successfully completed and was returning from Air Force Intelligence School and expressed his desire to return to his job as Boiler Firer upon his arrival in Fairbanks,

Townsend v. University of Alaska, et al

3

Alaska.

14.

By oral agreement with his supervisor, Townsend returned to his place of employment at University on May 19, 2002 reasonably expecting to resume his employment position as boiler firer for University only to find his supervisor, the Human Resources director, and a Police Chief physically barring him from entering the worksite and refusing to provide any employment position whatsoever because of his nearly six month absence from employment to complete Air Guard Orders and attend Air Force intelligence school in San Angelo, Texas.

15.

On 27 June 2002, more than six weeks after telling his supervisor that he had completed his Air Guard Orders was ready to return to his position of employment at University, and only after Townsend's union intervened and negotiated with the Defendant, University offered Townsend an employment position not as boiler firer, but as janitor with materially different work shift hours than the shift hours Townsend had before he informed his supervisors of his interest in joining the Air Guard.

16.

After reluctantly re-employing Townsend at University with a punitive employment position (janitor with changed shift hours) in July of 2003, University day shift supervisor Michael Setterberg and certain fellow employees, began to harass and berate Townsend for his association with the Air Guard.

17.

Upon information and belief, and in furtherance of a scheme devised by Townsend's supervisors to terminate Townsend from University employ under the pretence of cause, University supervisor Setterberg contacted Townsend's Air Guard Company Headquarters on February 6, 2003 and inquired as to Townsend's classified

security clearance and opined as to Townsend's unfitness for access to classified material in order to provoke a return phone call as justification for Defendant's own initiation of a University investigative report for the purpose of later discharging Townsend under the pretence of cause.

18.

In April of 2003, Townsend informed his supervisors at Defendant University he was soon to receive Air Guard Orders bringing him to Active Duty for a period of about 30 days to attend the Airman Leader Course. Townsend later provided his supervisors with a copy of his Air Guard duty orders on or about May 21, 2003.

19.

Townsend then absented himself on, or about, May 27, 2003 from his place of employment at Defendant University for the express purpose of fulfilling his Air Guard active duty orders to attend Airman Leader Course.

20.

On 27 June 2003, Townsend informed Defendant University he had completed his Air Guard orders to attend Air leadership school and that Townsend desired to return to an appropriate position of employment with Defendant University.

21.

Defendant returned Townsend to the previous employment position that Townsend held at University on June 29, 2003.

22.

On July 11, 2003 Defendant University suspended Townsend from employ and barred Townsend from campus on the basis of a University investigative report initiated on 6 February 2003 by Townsend's supervisor Michael Setterberg, in furtherance of Defendant's scheme to provide a pretext for Townsend's discharge for cause.

23.

On October 9, 2003, less than 120 days after re-employing Townsend following Townsend's completion of active duty for Airman Leader Course for a period of 32 days, Defendant terminated Plaintiff Robert David Townsend from its employ and permanently barred Townsend from entering Defendant's property.

24.

Prior to and at the time Plaintiff was terminated, one of the benefits of employment extended to Plaintiff by virtue of his employment with University was access to tuition free undergraduate college courses at University of Alaska. Prior to being terminated, Townsend was enrolled to attend college courses on the campus of University of Alaska at Fairbanks. After being terminated from Defendant's employ, Townsend was no longer allowed to enter University property even for the purpose of attending classes at University. Defendant filed a "no trespass" order with the Fairbanks Police department and alerted campus security personnel in order to prevent Townsend from entering University property at any time, for any reason.

25.

At all times relevant to this action, Townsend was, and remains, a Staff Sergeant in the Alaska Air National Guard (Air Guard).

26.

Townsend received an Honorable Discharge, or its equivalent, from each of his two periods of active duty service with the Air Guard, which ended, respectively, on 16 May 2002 and 27 June 2003.

27.

After Townsend's eventual re-employment by Defendant University on 27 June 2002, following Townsend's first absence from employment for the purpose of fulfilling active duty orders, and despite Townsend's immediately previous employment as Boiler

Townsend v. University of Alaska, et al

6

Firer, University made no reasonable efforts to enable Townsend to qualify for a re-employment position other than the punitive position offered as janitor some six weeks after Townsend gave notice of his desire to return to work for Defendant.

28.

After Townsend's reemployment following periods of active duty with the Air Guard in June 2002, and in June 2003, Defendant University took no actions to provide any training to Townsend to qualify him for a position within Defendant University's employ for which Townsend was qualified to perform.

29.

Upon information and belief, Townsend's association with the Air National Guard in 2001, 2002 and 2003 was, in whole or in part, known and considered by Defendant University prior to delaying Townsend's re-employment, providing Townsend with a punitive re-employment position as janitor, changing Townsend's work shift hours upon his return from fulfilling active duty orders, failing to offer any type of training following Townsend's absence from employment due to performance of active duty under Air Guard official orders, and otherwise denying him the benefits of employment and a work environment free of harassment and the opportunity to attend tuition free college classes as offered to other university employees.

30.

Upon information and belief, Townsend's association with the Air National Guard in 2001, 2002 and 2003 was, in whole or in part, known and considered by Defendant University and was a motivating factor in the Defendant's decision to initiate an internal investigation of Townsend in February of 2003 directly leading to the termination of Townsend's employ under the pretence of cause following the pretextual preparation of the in-house University initiated report in furtherance of a University scheme to defeat the requirements of Federal law with regard to Townsend's employment and re-

employment rights as an Alaska Air National Guardsman.

31.

Upon information and belief, University of Alaska at Fairbanks discharged Robert David Townsend from employment less than 180 days from his date of re-employment after a period of active military service of more than 30 days without cause.

32.

The facts alleged in Paragraphs 1 through 29 constitute a violation of the provisions of USERRA, 38 U.S.C. § 4301 et seq., including, but not limited to, 38 U.S.C. §§ 4311, 4312, 4313 and 4316(c).

33.

Upon information and belief, The University of Alaska at Fairbank's actions in this matter are a wilful violation of USERRA such that liquidated damages are legally appropriate under 38 U.S.C. § 4323(d)(1)(C).

34.

Upon information and belief, the Defendant University either knew or showed reckless disregard for the matter of whether its conduct regarding the discrimination and termination of Robert David Townsend was prohibited by 38 U.S.C. § 4301 et seq.

35.

After being informed that he was to be terminated, but prior to his last day of employment, Townsend informed Defendant University that he was protected by USERRA against termination other than for actual cause.

36.

Plaintiff, **ROBERT DAVID TOWNSEND**, hereby demands a trial by jury in the above-captioned matter as provided by the Seventh Amendment of the United States Constitution.

**WHEREFORE, ROBERT DAVID TOWNSEND** prays that due proceedings be had and that there be judgment herein in favor of **ROBERT DAVID TOWNSEND** and against **UNIVERSITY OF ALASKA** and **UNIVERSITY OF ALASKA AT FAIRBANKS**, defendants, for such sums as the Court should deem reasonable and proper, including reinstatement to his former position with like seniority, status and pay together with back pay, liquidated damages, reasonable attorneys' fees, pre-judgment interest, post-judgment interest, expert witness fees and other litigation expenses, or, back pay, front pay, liquidated damages, reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and other litigation expenses together with legal interest thereon as appropriate until paid, plus all costs of these proceedings, and for such other legal and equitable relief as the Court shall deem necessary and proper.

Respectfully Submitted,

_____
**GEORGE C. AUCOIN, Esq. (Trial Counsel)**
Louisiana Bar No. 24747
**DONALD L. HYATT, Esq.**
Louisiana Bar No. 24808
Law Offices of George C. Aucoin, APLC
2637 Florida Street, #25
Mandeville, LA 70448
Telephone: (985) 727-2263
Facsimile: (985) 951-7490
*COUNSEL FOR PLAINTIFF,*
*ROBERT DAVID TOWNSEND*